UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON
CIVIL ACTION NO. _____

*Electronically Filed*


CHARLESTON LABORATORIES, INC.,

PLAINTIFF

V.                                    **<u>VERIFIED COMPLAINT</u>**

SIDIS CORP,

> **Serve: *Via Fed. R. Civ. Pro. 4(e)(1) and Kentucky Long-arm Statute KRS 454.210***
> Office of the Kentucky Secretary of State
> 700 Capitol Avenue, Suite 86
> Frankfort, Kentucky 40601
>
> **For Mailing to:**
> Nigel M. Ferrey
> Registered Agent
> 345 East Mountain Avenue
> Fort Collins, Colorado 80524

BIOLOGIC CORP LLC,

> **Serve:**
> Dawn M. Denham
> Registered Agent
> 632 Russell Street
> Covington, Kentucky 41011

CHARLES R. SCHEPER,

> **Serve:**
> Charles R. Scheper
> 216 Kennedy Street
> Covington, Kentucky 41011

THE CHARLES R. SCHEPER IRREVOCABLE FAMILY TRUST,
by and through its Trustee, JULIE GEISEN,

**Serve:**
> Julie Geisen
> Trustee
> 216 Kennedy Street
> Covington, Kentucky 41011

CHARLES D. LECROIX,

> **Serve:** *Via Fed. R. Civ. Pro. 4(e)(1) and Kentucky Long-arm Statute KRS 454.210*
> Office of the Kentucky Secretary of State
> 700 Capitol Avenue, Suite 86
> Frankfort, Kentucky 40601

> **For Mailing to:**
> Charles D. Lecroix
> 8344 Weller Road
> Cincinnati, Ohio 45242

RAY TAKIGIKU,

> **Serve:**
> Ray Takigiku
> 202 Garrard Street #3
> Covington, Kentucky 41011

MARGARET M. VAN GILSE, and

> **Serve:**
> Margaret M. Van Gilse
> 202 Garrard Street #3
> Covington, Kentucky 41011

NIGEL M. FERREY,

> **Serve:**
> Nigel M. Ferrey
> 8170 Howe Road
> Burlington, Kentucky 41005

DEFENDANTS

*** *** *** ***

Comes now Plaintiff, Charleston Laboratories, Inc., by and through counsel, and for its Verified Complaint against Defendants SIDIS Corp; bioLOGIC Corp LLC; Nigel M. Ferrey; Charles R. Scheper; The Charles R. Scheper Irrevocable Trust, by and through its Trustee, Julie Geisen; Charles D. LeCroix; Margaret M. Van Gilse and Ray Takigiku, alleges as follows:

1.      Plaintiff Charleston Laboratories, Inc. ("Plaintiff" or "Charleston") is a corporation organized under Delaware law and has a principal place of business located at 1001 N. US Highway 1, Suite 500, Jupiter, Florida 33477.

2.      Defendant SIDIS Corp ("SIDIS") is a corporation organized under Colorado law and has a principal place of business located at 345 East Mountain Avenue, Fort Collins, Colorado, 80524.  SIDIS's registered agent is Nigel M. Ferrey at 345 East Mountain Avenue, Fort Collins, Colorado 80524.  SIDIS maintains a principal place of business in Kentucky directly and through SIDIS PS, LLC ("SIDIS PS").  SIDIS PS is a Kentucky limited liability company with its principal place of business at 632 Russell Street, Covington, Kentucky 41011, and its only known member is Nigel Ferrey.

3.      Defendant bioLOGIC Corp. LLC, also doing business as "bioLOGIC LLC" ("bioLOGIC"), is a limited liability company organized under Colorado law and has a principal place of business located at 632 Russell Street, Covington, Kentucky 41011.  bioLOGIC's registered agent is Dawn M. Denham at 632 Russell Street, Covington, Kentucky 41011.  Upon information and belief, bioLOGIC's sole members are Nigel M. Ferrey and Ray Takigiku, who are both Kentucky residents.

4.      Defendant Charles R. Scheper ("Scheper") is a natural person who is a Kentucky resident.  Upon information and belief, Scheper resides at 216 Kennedy Street, Covington, Kentucky 41011.

5.     Defendant The Charles R. Scheper Irrevocable Family Trust (the "Scheper Trust") is a trust established under Kentucky law.  Upon information and belief, the Trustee of the Scheper Trust is Scheper's wife, Julie Geisen ("Trustee").  Upon further information and belief, Trustee is a Kentucky resident, residing at 216 Kennedy Street, Covington, Kentucky 41011.  Upon information and belief, the Scheper Trust is also a stockholder of SIDIS.

6.     Defendant Charles D. LeCroix ("LeCroix") is a natural person and resident of Ohio.  Upon information and belief, LeCroix resides at 8344 Weller Road, Cincinnati, Ohio 45242 and regularly works at 632 Russell Street, Covington, Kentucky 41011.  Without limitation, during the relevant time period of this Verified Complaint, LeCroix has claimed to be a board member of SIDIS and claims to have "run" bioLOGIC for some period of time.  As alleged above, SIDIS and bioLOGIC also each had a principal place of business at 632 Russell Street, Covington, Kentucky.

7.     Defendant Ray Takigiku, Ph.D. ("Takigiku") is a natural person and resident of Kentucky.  Upon information and belief, Takigiku resides at 200 Garrard Street #3, Covington, Kentucky 41011.  Without limitation, Takigiku claims to be a Board Member of SIDIS and a co-founder of bioLOGIC.

8.     Defendant Margaret M. Van Gilse ("Van Gilse") is a natural person and resident of Kentucky.  Upon information and belief, Van Gilse resides at 202 Garrard Street #3, Covington Kentucky 41011.  Van Gilse has been an officer or director of various entity-defendants named herein during the relevant time period of this Verified Complaint.

9.     Defendant Nigel M. Ferrey ("Ferrey") is a natural person and resident of Kentucky.  Upon information and belief, Ferrey resides at 8170 Howe Road, Burlington, Kentucky 41005.  Without limitation, during the relevant time period of this Verified Complaint,

Ferrey has claimed to be (a) the founder, President and CEO of SIDIS; (b) a co-founder (along with Takigiku), member (along with Takigiku) and CEO of bioLOGIC.

10.     Prime DP LLC, also doing business as PrimeDP LLC ("PrimeDP"), is a limited liability company organized under Ohio law with a principal place of business located at 632 Russell Street, Covington, Kentucky 41011.  PrimeDP's last known registered agent was Van Gilse, and the only member/manager identified in its Annual Report Online Filing was LeCroix. Prime DP's authorization to transact business in Kentucky was revoked on September 30, 2014, and, on information and belief, Prime DP at that time ceased  doing business and any assets were acquired by or distributed to SIDIS or other SIDIS-Related Entities.

11.     Bexion Pharmaceuticals, LLC,   ("Bexion") is a limited liability company organized under Ohio law and has a principal place of business located at 632 Russell Street, Covington, Kentucky 41011.  Bexion's registered agent is Takigiku. PrimeDP and Bexion, together with Defendants SIDIS PS and Biologic, are all affiliated with SIDIS.

12.     Defendants SIDIS PS and Biologic are referenced hereinafter collectively as the "SIDIS-Related Entities."

13.     Ferrey, Takigiku, LeCroix, Van Gilse and Scheper are all affiliated with SIDIS, and are referenced hereinafter collectively as the "SIDIS-Related Individuals."

## NATURE OF ACTION

14.     This is an action for monetary damages and temporary and permanent injunctive relief resulting from the Defendants' tortious interference with contractual relationships, tortious interference with prospective contractual relationships, defamation, unfair competition, breach of confidentiality agreements, violations of Kentucky's Trade Secret Act pursuant to Ky. Rev. Stats. 365.880 *et seq.*, civil conspiracy, and false designations of origin pursuant to Section 43 of the Lanham Act.

5

15.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is a complete diversity of citizenship between the parties, and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

16.     This Court has personal jurisdiction over the parties because:

a.     SIDIS has conducted business in the Eastern District of Kentucky, and its actions in that district gave rise to the events at issue in this Verified Complaint;

b.     bioLOGIC has its principal place of business located in the Eastern District of Kentucky and conducts significant business therein, and its actions in that district gave rise to the events at issue in this Verified Complaint;

c.     Scheper, Van Gilse, Takigiku and Ferrey are residents of the Eastern District of Kentucky, conduct significant business therein, and their actions in that district gave rise to the events at issue in this Verified Complaint;

d.     LeCroix conducts significant business in the Eastern District of Kentucky and his actions in that district gave rise to the events at issue in this Verified Complaint; and

e.     The Scheper Trust is established under Kentucky law, its Trustee is a resident of Kentucky, and on behalf of the Scheper Trust, undertook actions in the Eastern District of Kentucky that gave rise to the events at issue in this Verified Complaint.

17.     Venue is proper in the Northern Division of the Eastern District of Kentucky pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted in this Verified Complaint occurred therein and because nearly all of the defendants are citizens of that judicial district.

## FACTUAL BACKGROUND

### I.     Charleston

18.     Charleston is an emerging specialty pharmaceutical company focused on the research and development of novel pain products that prevent or significantly reduce burdensome side effects of opioids, reduce the potential for liver injury, and deter misuse and abuse.

19.     G. Paul Bosse III ("Bosse") is the president, chief executive officer, and founder of Charleston.

20.     Charleston's product, "CL-108," is a fixed-dose, immediate-release bi-layered tablet that has undergone and continues to undergo U.S. Food and Drug Administration ("FDA") review for approval to be sold to the public.

21.     In June 2016, the FDA accepted for review the New Drug Application ("NDA") for CL-108 for the relief of moderate-to-severe pain while preventing or reducing the associated opioid-induced nausea and vomiting ("OINV").

22.     Charleston has been, and during the FDA review will be, under regulatory scrutiny and subject to regulatory audits.

23.     Furthermore, Charleston has been and will be subject to the due diligence of current and potential business and collaboration partners, including public companies that are also subject to public scrutiny and regulation.

24.     Charleston has been and will be damaged by any doubt as to the ownership of Charleston stock, the ownership of any interest in Charleston stock, or any asserted affiliation between Charleston on the one hand and SIDIS, the SIDIS-Related Entities or the SIDIS-Related Individuals on the other.

25.     Furthermore, Charleston has been and will be damaged by any misconception on the part of SIDIS, SIDIS stockholders, SIDIS-Related Entities, or SIDIS-Related Individuals that SIDIS has some financial interest in the success or performance of Charleston or Charleston products, including CL-108.

## II.     **Takigiku**

26.     In 2007 John Ameling ("Ameling") was a consultant to Charleston.

27.     In or about late 2007, a third-party introduced Takigiku to Ameling,

28.     Takigiku expressed to Charleston that he would be interested in working for Charleston.

29.     In or about early 2008, Ameling and Bosse traveled to Cincinnati with the intention of meeting only with Takigiku to discuss Takigiku becoming an employee of Charleston (the "Initial Meeting").

30.     To the surprise of Bosse, a number of other SIDIS-Related Individuals, including, without limitation, Ferrey, attended the Initial Meeting, during which Ferrey and other SIDIS-Related Individuals attempted to create a relationship between Charleston and one or more SIDIS-Related Entities, which caused the Initial Meeting to become very combative and to be terminated.

31.     At that time, Bosse clearly communicated to Takigiku and other SIDIS-Related Individuals that Charleston wanted no affiliation or association, in any way, with any of the

SIDIS-Related Entities or with Ferrey or other individuals associated with the SIDIS-Related Entities.

32.     However, unaware that Takigiku would harm Charleston for the benefit of one or more of the SIDIS-Related Individuals or SIDIS-Related Entities, Charleston hired Takigiku as an employee and issued Charleston stock to him personally.

33.     More specifically, in 2008, Takigiku, Ameling and Bernard P. Schachtel ("Schachtel") became employees of Charleston and thereby acquired Charleston common stock. In doing so, Takigiku, Ameling and Schachtel entered into a Stockholders Agreement ("SHA") and an employee Stock Restriction Agreement ("ESRA") with Charleston dated May 30, 2008.

34.     Relating to Takigiku's position as a shareholder, in July 2008, Baker, a founder and the CFO of Charleston at the time, requested that Takigiku, Ameling and Schachtel each pay $20,000 of capital into Charleston to show "skin in the game" in connection with concerns raised by potential investors in the Company.

35.     It was understood by each party that the payment would be paid as a capital contribution in support of the Company's continued operations and in consideration of the opportunity to attract investors into the Company.

36.     Relating thereto, it was made clear and agreed by Takigiku, Ameling and Schachtel that the $20,000 capital contribution was to be made by each of them, respectively, personally, and not by anyone else or any company with which he may have been affiliated.

37.     It was further understood by each party that no additional shares of equity or other securities would be issued in connection with the payment, and the Company made no promise and there was no expectation of any additional shares of equity, any debt security, or any return of such payment.

38.     Nevertheless, when Takigiku first tendered payment in August 2008, the payment was made by check drawn on an account of a SIDIS-Related Entity, PrimeDP.

39.     Charleston rejected the check drawn on the PrimeDP account, and Takigiku thereafter tendered a check drawn on his personal account, representing that it was from his own personal funds, which Charleston accepted.

40.     Only recently did Charleston learn, on information and belief, that Prime DP or some other SIDIS-Related Entity had deposited funds into Takigiku's personal account or otherwise paid or reimbursed Takigiku relating to Takigiku's $20,000 capital contribution to Charleston.

41.     In late 2009, Takigiku represented to Charleston that Scheper was a relative of Van Gilse (described as Takigiku's common law wife) and was interested in becoming a stockholder of Charleston because of Van Gilse's personal relationship with Takigiku.

42.     In early 2010, Scheper caused the Scheper Trust to become a Series A Preferred Stockholder of Charleston.  All preferred stock owned by the Scheper Trust was converted to common stock in 2014.

**III.    The Charleston Stockholders Agreement**

43.     The SHA was entered into by and among Charleston, as the "Company," and Bosse, Ameling, Schachtel, Takigiku, Ryan T. Baker and Chris Goodwin, as the "Founding Shareholders" (collectively, the "Founding Shareholders" or the "Founding Stockholders").  A true and correct copy of the SHA is attached hereto as Exhibit "A".

44.     Section 5.4 of the SHA provides that it "shall be deemed to be made under and governed by and construed in accordance with the laws of the State of Delaware."

10

45.     Pursuant to both the SHA and the ESRA, all Charleston stock and any interest in the stock issued to Takigiku was restricted and non-transferable, except as specifically permitted by the terms of the SHA and authorized by Charleston.

46.     Pursuant to both the SHA and the ESRA, all Charleston stock and any interest in the stock issued to Ameling was restricted and non-transferable, except as specifically permitted by the terms of the SHA and authorized by Charleston.

47.     At no time did Charleston ever permit or authorize Takigiku to transfer any ownership or interest in Charleston stock.

48.     Charleston only permitted Ameling to transfer his ownership or interest in Charleston stock under the following circumstances: On July 18, 2014, Ameling surrendered Certificate #15 and Certificate #19 to the Company in order to have the 432,000 shares of Common Stock evidenced by such certificates transferred to The John F. Ameling Family Trust (the "Ameling Family Trust").  The Ameling Family Trust is "a trust whose sole beneficiaries are immediate family members" of Ameling, and was therefore a Permitted Transferee as defined in Section 1.2(a) of the SHA.  No other transfer of ownership or interest in Charleston stock by Ameling was permitted.

49.     As contemplated by Section 202(a) of the General Corporation Law of the State of Delaware, all stock certificates issued by Charleston to Takigiku and all stock certificates issued by Charleston to Ameling contained legends stating as follows:

> THESE SHARES ARE SUBJECT TO CERTAIN TRANSFER RESTRICTIONS AND RIGHT OF REPURCHASE AS SET FORTH IN THE CHARLESTON LABORATORIES, INC. STOCKHOLDERS AGREEMENT DATED AS OF MAY 30, 2008 ON FILE WITH THE SECRETARY OF THE COMPANY.
>
> THE SHARES REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO REPURCHASE BY THE ISSUER UPON THE

11

OCCURRENCE OF CERTAIN EVENTS SET FORTH IN THAT CERTAIN STOCK RESTRICTION AGREEMENT DATED AS OF MAY 30, 2008 BY AND BETWEEN THE ISSUER AND THE ORIGINAL HOLDER OF SUCH SHARES.

THESE SHARES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED ("ACT"). SUCH SHARES MAY NOT Be SOLD, TRANSFERRED, ASSIGNED, PLEDGED OR HYPOTHECATED UNLESS AND UNTIL A REGISTRATION STATEMENT UNDER THE ACT IS IN EFFECT AS TO SUCH TRANSFER, UNLESS THE COMPANY HAS RECEIVED AN OPINION OF COUNSEL OR OTHER EVIDENCE REASONABLY SATISFACTORY TO THE COMPANY AND ITS COUNSEL, THAT REGISTRATION IS NOT REQUIRED.

## COUNT I
## COMMON LAW UNFAIR COMPETITION

**(AGAINST SIDIS, BIOLOGIC, FERREY, TAKIGIKU, VAN GILSE, LECROIX)**

50.     Plaintiff hereby repeats and realleges the allegations of the preceding paragraphs of this Verified Complaint, as if fully set forth herein.

51.     SIDIS is a holding company of so-called "portfolio companies," with no product or services of its own.  SIDIS has recently asserted, and Charleston agrees, that SIDIS is a competitor of Charleston due to the fact that SIDIS, either directly or through its subsidiaries and affiliated companies, competes with Charleston in the pharmaceutical and biotechnology industries, and for investors, partners, affiliations and strategic collaborations in those industries.

52.     On information and belief, SIDIS has at all times relevant been dominated and controlled by Ferrey, but Takigiku, Van Gilse, and LeCroix have all cooperated in developing and have all executed Ferrey's plans and instructions, and Takigiku, Van Gilse and LeCroix have all participated with Ferrey in creating, publishing and otherwise communicating the misrepresentations described herein.

53.     Unbeknownst to Charleston, Takigiku reported to SIDIS and bioLOGIC and to Ferrey and LeCroix confidential information of Charleston, including, without limitation, information relating to Charleston's efforts to raise money and fund the company and research and development of Charleston products, including CL-108.

54.     Recently, Charleston has learned that SIDIS, bioLOGIC, Ferrey, Takigiku, LeCroix and Van Gilse have over time and to this day falsely represented to Charleston investors;  potential Charleston investors;  stockholders, investors and potential investors of SIDIS;  members, stockholders, investors and potential investors of SIDIS-Related Entities;  and others, including the public, that:

    a)     Charleston is, among other things, a "SIDIS Company," "client," "strategic client," "value contributor," "development company," and "partner" with whom SIDIS allegedly enjoys "business synergies," or words to that effect.

    b)     SIDIS has an equity interest or interest in the equity of Charleston.

55.     Recently, Charleston has also learned that SIDIS, bioLOGIC, Ferrey, Takigiku, LeCroix and Van Gilse have been using not only Charleston's name but also the advancement and success of Charleston's product CL-108 to lure potential investors away from Charleston to SIDIS based upon the false representation that an investment in SIDIS would include an equity interest or interest in the equity of Charleston.

56.     More specifically, Charleston has learned recently that as of December 2015, at least SIDIS, Ferrey, Takigiku and LeCroix were claiming that SIDIS had an equity interest or interest in the equity of Charleston.

57.     Further, Charleston has learned recently that as of December 2015, bioLOGIC and Van Gilse were representing that Charleston was a client of bioLOGIC, and that bioLOGIC was "accelerating [Charleston] to commercialization."

58.     Charleston was never a client of bioLOGIC, and bioLOGIC has had nothing to do with accelerating the company or the company's product(s) to commercialization.

59.     Charleston is not, nor has Charleston ever been, a "SIDIS Company," "client," "strategic client," "value contributor," "development company," or "partner" of SIDIS and has never enjoyed "business synergies" with SIDIS.

60.     Charleston is not, nor has Charleston ever been affiliated with SIDIS, and SIDIS has never had an equity interest or interest in the equity of Charleston.

61.     SIDIS, bioLOGIC, Ferrey, Takigiku, LeCroix and Van Gilse, by virtue of their actions, jointly and severally, have engaged in significant and unfair competition with Charleston in or affecting commerce within Kentucky and outside of the State.

62.     These actions include, but are not limited to, intentionally deceiving the public by using Charleston's name, identity, and goodwill to attract potential investors, partners and strategic collaborators by falsely telling them that Charleston is affiliated with SIDIS and that SIDIS has an ownership interest in Charleston.

63.     Based upon such misrepresentations, SIDIS, bioLOGIC, Ferrey, Takigiku, LeCroix and Van Gilse have among other things, induced investors to invest with SIDIS, at times to the exclusion of Charleston, for the benefit of SIDIS and SIDIS Related Entities and to the detriment of Charleston.

64.     Further, Defendants have unfairly profited by the use of Charleston's name and goodwill in that at least one certain individual has invested with SIDIS based upon the representation that an investment in SIDIS would include an interest in Charleston. If not for such a representation, such investor would have invested with Charleston.

65.     Furthermore, the deception described herein perpetrated by SIDIS, bioLOGIC, Ferrey, Takigiku, LeCroix and Van Gilse has caused or imminently will cause irreparable harm to Charleston by interfering with relationships that Charleston has developed with existing and potential investors, partners and collaborators of Charleston. As a result of the acts described above, Defendants SIDIS, bioLOGIC, Ferrey, Takigiku, LeCroix and Van Gilse have engaged in unfair competition.

66.     As a direct and proximate result, Charleston has suffered, and will continue to suffer, damages and injury.

**COUNT II**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS**

**(AGAINST SIDIS, FERREY, LECROIX AND TAKIGIKU)**

67.     Plaintiff hereby repeats and realleges the allegations of the preceding paragraphs of this Verified Complaint, as if fully set forth herein.

68.     At all relevant times, Defendants SIDIS, Ferrey and LeCroix were aware of and had actual or constructive knowledge of the existing contractual relationships between Charleston and its employee-stockholders, including Takigiku, Ameling and Schachtel.

69.     At all relevant times, Defendants SIDIS, Ferrey, LeCroix and Takigiku were aware of and had actual or constructive knowledge of the existing contractual relationship between Charleston and its stockholder, the Scheper Trust.

70.     Defendants SIDIS, Ferrey, LeCroix and Takigiku intentionally interfered with the contractual relationship between Charleston and the Scheper Trust by causing Scheper, as authorized agent of the Scheper Trust, to obtain confidential proprietary information of Charleston in or around 2015 for the improper use and benefit of SIDIS, Ferrey, LeCroix and Takigiku.

15

71.     In part suspected but not known by Charleston at the time and in all respects recently discovered, Defendants SIDIS, Ferrey and LeCroix intentionally interfered with the contractual relationships between Charleston and Takigiku, Ameling and Schachtel by, among other things:

a)      Using Takigiku to attempt to coerce Ameling and Schachtel to oust Charleston's founder and the creator of CL-108, Bosse, and replace Bosse with Ferrey;

b)      Attempting to coerce Ameling, whether knowingly or unknowingly, to purport to transfer an interest in Ameling's common stock to SIDIS;

c)      Causing Charleston to issue common stock to Takigiku  with the intention of Takigiku purporting to transfer an interest in Takigiku's common stock to SIDIS;

d)      Causing Takigiku to abandon his obligations and responsibilities as an employee and fiduciary of Charleston.

72.     Defendants' motive behind its interference with the existing contractual relationships between Charleston and its stockholders was improper.

73.     Defendant had no privilege or justification to excuse its interference with Charleston's contractual relationships.

74.     Charleston has suffered, and will continue to suffer, damages and irreparable harm as a direct and proximate result of Defendants' intentional interference with Charleston's existing contractual relationships.

**COUNT III**
**TORTIOUS INTERFERENCE WITH**
**PROSPECTIVE CONTRACTUAL RELATIONSHIPS**

**(AGAINST SIDIS and BIOLOGIC, FERREY, TAKIGIKU, VAN GILSE, LECROIX)**

75.     Plaintiff hereby repeats and realleges the allegations of the preceding paragraphs of this Verified Complaint, as if fully set forth herein.

16

76.     In connection with Charleston's efforts to raise money to fund the company and research and development of its products, Charleston enjoyed existing and/or expectant business relationships with potential investors.

77.     At all relevant times, Defendants were aware of and had actual or constructive knowledge of the existing and/or expectant business relationships between Charleston and its potential investors.

78.     As set forth above, and recently discovered by Charleston, Defendants intentionally interfered with these existing and/or expectant prospective relationships by, among other things, contacting investors who had existing and/or expectant business relationships with Charleston and coercing such investors not to invest with Charleston, and/or to instead invest with SIDIS, falsely telling such third parties that Charleston was affiliated with SIDIS or that SIDIS owned equity in Charleston and that an investment in SIDIS would include an interest in Charleston, and offer more diversification and value.

79.     Charleston has recently identified one such investor, who abandoned the intent to invest with Charleston as a result of SIDIS misrepresentations, and who eventually invested with SIDIS rather than Charleston.

80.     Defendants' motive behind its interference with the existing and/or expectant business relationships between Charleston and its potential investors was improper.

81.     Charleston has suffered, and will continue to suffer, damages and irreparable harm as a direct and proximate result of Defendants' intentional interference with Charleston's existing and prospective business relationships.

**COUNT IV**
**DEFAMATION**

**(AGAINST  BIOLOGIC AND VAN GILSE)**

17

82. Plaintiff hereby repeats and realleges the allegations of the preceding paragraphs of this Verified Complaint, as if fully set forth herein.

83. On or about December 10, 2015, Defendants learned that bioLOGIC and Van Gilse were falsely representing that Charleston was a "client of bioLOGIC" and that bioLOGIC was "accelerating" Charleston or Charleston's product(s) "to commercialization".

84. Charleston is not and has never been a client of bioLOGIC.

85. bioLOGIC has never accelerated Charleston or Charleston's product(s) to commercialization.

86. Charleston has no affiliation with bioLOGIC.

87. These statements were published to third parties, directly, through the media, verbally, and in writing.

88. Charleston made demand to bioLOGIC, including Van Gilse who represents herself as the President of Business Development of bioLOGIC, to cease and desist from publishing representations that Charleston was a client of bioLOGIC and to take down or cause to be taken down and otherwise removed and corrected any such false publications.

89. Charleston made demand to bioLOGIC, including Van Gilse, to cease and desist from publishing and to take down or cause to be taken down and otherwise removed and corrected any false representations that bioLOGIC has any relationship or affiliation with Charleston or has ever accelerated Charleston or Charleston's product(s) to commercialization any such false publications.

90. After Charleston made its cease and desist demand, bioLOGIC and Van Gilse continued to publish representations that Charleston is or was a client of bioLOGIC, and that bioLOGIC has accelerated or is accelerating Charleston or Charleston's product(s) to

18

commercialization.   bioLOGIC and Van Gilse have failed or refused to cause the false information to be taken down or otherwise removed and corrected.

91.    Charleston has suffered and continues to suffer damages and irreparable harm as a direct and proximate result of Defendants' defamatory statements.

**COUNT V**
**BREACH OF CONFIDENTIALITY AGREEMENT**

**(AGAINST TAKIGIKU)**

92.    Plaintiff hereby repeats and realleges the allegations of the preceding paragraphs of this Verified Complaint, as if fully set forth herein.

93.    As a condition of his relationship as an employee of Charleston, Takigiku executed a Confidential Information and Invention Assignment Agreement, a copy of which is attached hereto as Exhibit "B" (the "CIIAA Agreement").

94.    Pursuant to the CIIAA Agreement and related agreements to maintain Charleston information as confidential, Takigiku agreed, among other things, that, during the term of his employment with Charleston and thereafter, Takigiku would hold in strictest confidence, and not use, except for the benefit of the Company, or disclose to any person, firm or corporation without written authorization of the Board of Directors of the Company, any Confidential Information of the Company, except under a nondisclosure agreement duly authorized and executed by the Company.

95.    Pursuant to the CIIAA, "Confidential Information" is defined as any nonpublic information that relates to the actual or anticipated business or research and development of the Company,  technical data, trade secrets or know-how, including, but not limited to, research, product plans or other information regarding the Company's products or services and markets therefore, customer lists and customers (including, but not limited to, customers of the Company

on whom he called or with whom he became acquainted during the term of his employment), software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or any other business information.

96.     Takigiku disclosed Charleston's proprietary, confidential information to the other Defendants, including, without limitation, information relating to the ownership of Charleston's stock, value of Charleston stock, information relating to Charleston's investors and potential investors, partners and potential partners, collaborators and potential collaborators and creditors, as well as information relating to Charleston's product CL-108 and FDA proceedings relating to the product.

97.     Charleston at no time gave Takigiku permission to communicate or provide Charleston's proprietary, confidential information to the other Defendants.

98.     By providing Charleston's proprietary, confidential information to Defendants other than Takigiku, Takigiku breached the CIIAA.

99.     Charleston has suffered and continues to suffer damages and irreparable harm as a direct and proximate result of Takigiku's breach of his confidentiality obligations.

**COUNT VI**
**BREACH OF CONFIDENTIALITY AGREEMENT**

**(AGAINST SCHEPER AND THE SCHEPER TRUST)**

100.     Plaintiff hereby repeats and realleges the allegations of the preceding paragraphs of this Verified Complaint, as if fully set forth herein.

101.     The Scheper Trust was for a period of time a Preferred A Stockholder of Charleston, but is now only a Common Stockholder of Charleston.

20

102.    In or about November 2014, the Trust, through Scheper, duly authorized to act as agent of the Trust by the Trustee, began seeking from the Trust sensitive, confidential information relating to the stock of Charleston and the "cap table" or capitalization of the Company.

103.    Scheper purported to seek such confidential information strictly and solely for the purpose of determining the value of the Trust's stock ownership interest in Charleston.

104.    To induce Charleston to provide to Scheper as authorized agent of the Trust to provide such sensitive, confidential, proprietary information to him, Scheper represented to Charleston's agents that any information provided would be maintained as confidential by the Trust and used strictly for the purpose of determining the value of the Trust's stock ownership interest in Charleston.

105.    Charleston provided certain sensitive, confidential, and proprietary information to Scheper in reliance on these representations.

106.    Charleston at no time gave Scheper permission to communicate or disclose Charleston's confidential information to SIDIS, any SIDIS-Related Entities or any SIDIS-Related Individuals.

107.    Scheper, however, sought this confidential information for the purpose of determining and disclosing such information to SIDIS, SIDIS-Related Entities and SIDIS-Related Individuals, including, without limitation, Ferrey, LeCroix, and Takigiku.

108.    In all events, Scheper wrongfully disclosed in violation of his confidentiality agreement with Charleston such confidential information obtained by him from Charleston to SIDIS, SIDIS-Related Entities and SIDIS-Related Individuals, including, without limitation, Ferrey, LeCroix, and Takigiku.

109.    By using Charleston's confidential information to benefit SIDIS, SIDIS-Related Entities and SIDIS-Related Individuals, or any of them, Scheper breached his confidentiality agreement with Charleston.

110.    By using Charleston's confidential information to benefit SIDIS, SIDIS-Related Entities and SIDIS-Related Individuals, or any of them, the Scheper Trust breached its confidentiality agreement with Charleston.

111.    Charleston has suffered and continues to suffer damages and irreparable harm as a direct and proximate result of the breach by Scheper of his and the Scheper Trust of its confidentiality obligations.

**COUNT VII**
**VIOLATIONS OF KENTUCKY'S TRADE SECRET ACT**

**(AGAINST SIDIS, BIOLOGIC, FERREY, TAKIGIKU,**
**LECROIX, VAN GILSE, SCHEPER AND THE SCHEPER TRUST)**

112.    Plaintiff hereby repeats and realleges the allegations of the preceding paragraphs of this Verified Complaint, as if fully set forth herein.

113.    This action is brought pursuant to the Kentucky Trade Secret Act, Ky. Rev. Stat. § 365.880 through 365.900 (2011) (the "Trade Secret Act").

114.    Charleston maintained as confidential certain information, including a formula, pattern, compilation, program, data, device, method, technique, or process, that (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy (the "Trade Secrets").

115.     By improper means more specifically described in Paragraphs 26-30, 36-40, 49-60, 66-68, 75-77, 81-85, 91-95 and 99-106 Defendants misappropriated Charleston's Trade Secrets, as defined in the Trade Secret Act.

116.     Defendants' misappropriation of Charleston's confidential information violated the Trade Secret Act.

117.     Defendants' misappropriation of Charleston's confidential information was in willful or wanton disregard of Charleston's rights.

118.     Charleston has suffered and continues to suffer damages and irreparable harm as a direct and proximate result of Defendants misappropriation of its trade secrets.

## FEDERAL LAW

## COUNT VIII
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1091 *et seq.*)

## (AGAINST SIDIS, BIOLOGIC, FERREY, TAKIGIKU, LECROIX AND VAN GILSE)

119.     Plaintiff hereby repeats and realleges the allegations of the preceding paragraphs of this Verified Complaint, as if fully set forth herein.

120.     Defendants SIDIS, bioLOGIC, Ferrey, Takigiku, LeCroix and Van Gilse have been using Charleston's name and success to lure potential investors away from Charleston to SIDIS based upon the representation that an investment in SIDIS would include an interest in Charleston.

121.     Defendants SIDIS, bioLOGIC, Ferrey, Takigiku, LeCroix and Van Gilse have made false or misleading representations of fact regarding Charleston's relationship with SIDIS to potential investors as well as in its marketing materials.

122.     Defendants, by virtue of their actions, have engaged in significant and unfair competition with Charleston, significantly affecting commerce within Kentucky and outside of the State.

123.     These representations are likely to cause confusion or mistake, or deceive potential investors and other individuals to believe that there was or is some affiliation, connection, or association of Charleston with SIDIS, SIDIS-Related Entities, or SIDIS-Related Individuals, or all of them, when there is not.

124.     Charleston has suffered damages and irreparable harm as a direct and proximate result of Defendants' false or misleading representations of fact.

**COUNT IX**
**CIVIL CONSPIRACY**

**(AGAINST SIDIS, BIOLOGIC, FERREY, TAKIGIKU,**
**LECROIX, VAN GILSE, SCHEPER AND THE SCHEPER TRUST)**

125.     Plaintiff hereby repeats and realleges the allegations of the preceding paragraphs of this Verified Complaint, as if fully set forth herein.

126.     Pursuant to an agreement by and among the SIDIS-Related Individuals, led by Ferrey,  and the SIDIS-Related Entities, led by SIDIS, the Defendants conspired together to commit the torts and statutory violations set forth in the Counts set forth above.

127.     As a result of the agreement by and among the SIDIS-Related Individuals, led by Ferrey, and the SIDIS-Related Entities, led by SIDIS, the Defendants did commit torts and statutory violations against Charleston.

128.     Charleston has been damaged as a result of the acts done pursuant to the agreement.

129.    Ferrey, Takigiku, Van Gilse and Scheper are jointly and severally liable for each act done in pursuance of the conspiracy.

## COUNT XI
## INJUNCTIVE RELIEF

## AGAINST SIDIS, BIOLOGIC, FERREY, TAKIGIKU,
## LECROIX, VAN GILSE, SCHEPER AND THE SCHEPER TRUST)

130.    Plaintiff hereby repeats and realleges the allegations of the preceding paragraphs of this Verified Complaint, as if fully set forth herein.

131.    Plaintiff seeks Relief pursuant to Fed. R. Civ. P. 65, whereby the court may grant an injunction to "mandatorily direct the doing of an act."

132.    Plaintiff has a substantial likelihood of success on the merits.

133.    Plaintiff will suffer irreparable harm unless injunction issues.

134.    Plaintiff has no adequate remedy at law.

135.    The threatened injury to Plaintiff outweighs any threatened harm injunction may cause Defendants.

136.    Injunction will not disserve the public interest, but instead will serve the interest of stability and certainty in ownership and governance of Plaintiff, a Delaware corporation, and avoid misapprehension of third parties relating to Charleston vis-à-vis SIDIS, the SIDIS-Related Entities, and the SIDIS-Related Individuals.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

a) That this Court temporarily, preliminary, and permanently enjoin and restrain the Defendants and all of their subsidiaries, affiliates, parent companies, related entities,

officers, directors, shareholders, owners, agents, employees, representatives, attorneys, successors, and assigns, from:

    i)    intentionally interfering with Charleston's existing and prospective business relationships, and from representing to any third party that Charleston is owned by or affiliated with SIDIS; and requiring Defendants, and any of the above-listed affiliated entities and individuals, to provide an accounting of all profits, gains, and advantages received or realized as a result of their conduct described in this Count and to disgorge all profits, gains, and advantages received or realized as a result of such conduct;

    ii)    making defamatory statements regarding Charleston vis-à-vis bioLOGIC;

    iii)    using Plaintiff's name to in any way suggest that Charleston and SIDIS are affiliated;

    iv)    making false or misleading representations of fact regarding Charleston's relationship with SIDIS, and any one or more of the SIDIS-Related Entities or SIDIS-Related Individuals;

    v)    claiming or representing that SIDIS or any one or more of the SIDIS-Related Entities has or ever had any interest in, directly or indirectly, the equity of Charleston or has or had any affiliation with Charleston; and

    vi)    claiming or representing that SIDIS or any one or more of the SIDIS-Related Entities has or had any participation in the development or commercialization of any of Charleston's products, including, without limitation, CL-108.

b) That this Court require SIDIS and the SIDIS-Related Entities to take specific affirmative action, including without limitation the issuance of an approved press

release, to retract and correct false representations to Charleston investors; potential Charleston investors; stockholders, investors and potential investors of SIDIS; members, stockholders, investors and potential investors of SIDIS-Related Entities; and others, including the public, that:

    i)    Charleston is, among other things, a "SIDIS Company," "client," "strategic client," "value contributor," "development company," and "partner" with whom SIDIS allegedly enjoys "business synergies," or words to that effect.

    ii)    SIDIS has an equity interest or interest in the equity of Charleston.

c)  That this Court require Defendants to return or destroy, and certify return or destruction of all confidential information of Charleston;

d)  That this Court grant judgment against Defendants for all damages;

e)  That this Court grant an award of pre-judgment interest, and attorneys' fees, costs and expenses incurred in connection with this action; and

f)  That this Court award exemplary damages for Defendants' willful or wanton misappropriation, pursuant to KRS § 365.884(2);

g)  That this Court award an injunction enjoining Defendants from any further violation of the Trade Secret Act, pursuant to KRS §365.882;

h)  That this Court award attorneys'' fees and costs, pursuant to KRS §365.886; and

i)  Such further relief as this Court deems just and appropriate under the circumstances.

## <u>JURY DEMAND</u>

Plaintiff hereby demands and requests trial by jury of all issues that are triable by jury.

Respectfully submitted,

By: _/s/ Palmer G. Vance II_

27

Palmer G. Vance II
Adam C. Reeves
STOLL KEENON OGDEN PLLC
300 West Vine Street, Suite 2100
Lexington, KY 40507-1380
(859) 231-3000
gene.vance@skofirm.com
adam.reeves@skofirm.com

and

Bridget Ann Berry
GREENBERG TRAURIG, P.A.
777 South Flagler Drive, Suite 300E
West Palm Beach, Florida 33401
T: (561) 650-7900
F: (561) 655-6222
berryb@gtlaw.com
(*Pro Hac Vice Motion Forthcoming*)

COUNSEL FOR PLAINTIFF,
CHARLESTON LABORATORIES, INC.

120434.155871/4572614.1

PLAINTIFF'S VERIFICATION

I, G. Paul Bosse III, being first duly sworn, depose and say I am the president, chief executive officer, and founder of Charleston Laboratories, Inc. and am duly authorized to sign this Verification on behalf of Charleston Laboratories, Inc. I hereby state that the facts contained in the foregoing are true and correct to the best of my knowledge and belief.

This 31st day of October, 2016.

Charleston Laboratories, Inc.

By: _____
G. Paul Bosse III
Title:   President, Chief Executive Officer,
and Founder
Charleston Laboratories, Inc.

STATE OF Florida )
COUNTY OF PalmBeach )

Subscribed, sworn to, and acknowledged before me by Chelsea E. Malone on this the 31st day of October, 2016.

My Commission Expires: 08/04/2020



NOTARY PUBLIC

Notary Public State of Florida
Chelsea E Malone
My Commission GG 018604
Expires 08/04/2020