UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 16-195-DLB-JGW

CHARLESTON LABORATORIES, INC.                                   PLAINTIFF

vs.                    **MEMORANDUM OPINION AND ORDER**

SIDIS CORPORATION, et al.                                        DEFENDANTS

*********************

## I.  Introduction

This matter is before the Court upon Defendants' Motion to Dismiss Counts 7, 8, and 9 of Plaintiff Charleston Laboratories, Inc.'s Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132.

## II.  Factual and Procedural Background

This case involves a large number of actors and defendants, all interconnected in various ways.  Accordingly, the Court will begin by identifying the parties named in the Complaint.

Plaintiff Charleston Laboratories, Inc. ("Charleston") is an emerging pharmaceutical company. (Doc. # 1 at ¶ 18).  Paul Bosse is the president, chief executive officer, and founder of Charleston.  *Id.* at ¶ 19.  Charleston has developed a drug, "CL-

1

108", that is undergoing U.S. Food and Drug Administration review for approval to sell. *Id.* at ¶¶ 20-21.

Defendant SIDIS Corporation ("SIDIS") is a holding company of "portfolio companies," that compete with Charleston in the pharmaceutical and biotechnology industries for investors, partners, affiliations, and strategic collaborations. *Id.* at ¶ 51. Nigel M. Ferrey is the founder, President, and CEO of SIDIS. *Id.* at ¶ 9. Ferrey and Defendant Ray Takigiku are the sole members and founders of Defendant bioLOGIC Corporation LLC ("bioLOGIC"). *Id.* at ¶ 3. Takigiku is also a board member of SIDIS, and is the registered agent of Bexion Pharmaceuticals, LLC ("Bexion"). *Id.* at ¶ 7.

Defendant Charles D. LeCroix is a board member of SIDIS, and "claims to have 'run' bioLOGIC for some period of time." *Id.* at ¶ 6.

Defendant Margaret Van Gilse is an officer or director of "various entity-defendants" named in the Complaint. *Id.* at ¶ 8.

Prime DP LLC ("Prime") is a limited liability company whose only identified member is Defendant LeCroix. *Id.* at ¶ 10. Defendant Van Gilse is Prime's last-known registered agent. *Id.* When Prime ceased doing business in Kentucky, its assets were acquired by or distributed to SIDIS or other SIDIS-related entities. *Id.*

Defendant Charles R. Scheper is the settlor of the Defendant Charles R. Scheper Irrevocable Family Trust (the "Scheper Trust"). *Id.* at ¶ 5. The Scheper Trust is a stockholder of SIDIS. *Id.*

Throughout the Complaint, Plaintiff refers to SIDIS and bioLOGIC collectively as "SIDIS-Related Entities" and to Ferrey, Takigiku, LeCroix, Van Gilse and Scheper as "SIDIS-Related Individuals." *Id.* at ¶¶ 12-13.

In 2007, a third party introduced John Ameling, a Charleston consultant, to Defendant Takigiku. *Id.* at ¶¶ 26-27. In 2008, Ameling and Bosse, Charleston's CEO, traveled to Cincinnati to meet with Takigiku, and discuss Takigiku's potential employment with Charleston. *Id.* at ¶ 29. According to Charleston, a number of SIDIS-related individuals also attended the meeting and attempted to create a relationship between Charleston and one or more SIDIS-related entities. *Id.* at ¶ 30. Charleston expressed that it was not interested in forming any affiliation with SIDIS. *Id.* at ¶ 31.

Charleston subsequently hired Takigiku, and issued Charleston stock to him personally. *Id.* at ¶ 32. After issuing that stock, Charleston learned that Prime DP, a SIDIS–related entity, or some other SIDIS-related entity, had deposited funds into Takigiku's personal account or reimbursed Takigiku for his capital contribution to Charleston. *Id.* at ¶ 40. In 2009, Takigiku represented to Charleston that Scheper was a relative of his who was interested in becoming a stockholder of Charleston, and in 2010, Scheper caused the Scheper Trust to become a stockholder of Charleston. *Id.* at ¶¶ 41-42.

As part of his employment with Charleston, Takiguku executed a Confidential Information and Invention Assignment Agreement ("CIIAA Agreement"). *Id.* at ¶ 93. Pursuant to that agreement, Takigiku agreed that during the term of his employment and thereafter, he would not disclose any of Charleston's confidential information. *Id.* at ¶ 94.

Charleston now alleges that Takigiku violated the CIIAA agreement, and disclosed Charleston's proprietary, confidential information to the other Defendants. *Id.* at ¶ 96.

Specifically, Charleston alleges that Takigiku reported to SIDIS, bioLOGIC, Ferrey, and LeCroix confidential information relating to Charleston's efforts to raise money, and its research and development of certain products, including CL-108. *Id.* at ¶ 53. According to Charleston, SIDIS, bioLOGIC, Ferrey, Takiguku, LeCroix, and Van Gilse falsely represented to Charleston investors and potential investors that Charleston is affiliated with SIDIS. *Id.* at ¶ 54. Charleston claims that the SIDIS-related entities and individuals used Charleston's name, as well as the advancement and success of Charleston's product, CL-108, to lure potential investors away from Charleston to SIDIS, by representing that an investment in SIDIS would include an interest in Charleston. *Id.* at ¶ 55. Allegedly, in 2015, bioLOGIC and Van Gilse falsely represented to investors that Charleston was a client of bioLOGIC. *Id.* at ¶ 57.

On November 2, 2016, Charleston filed the instant Complaint seeking monetary damages and temporary and permanent injunctive relief, alleging tortious interference with contractual relationships, tortious interference with prospective contractual relationships, defamation, unfair competition, breach of confidentiality agreements, violations of Kentucky's Trade Secrets Act, civil conspiracy, and false designations of origin under the Lanham Act. *Id.* at 14. The Defendants collectively moved to dismiss Charleston's civil-conspiracy and false-designation-of-origin claims, as well as

Charleston's claim under the Kentucky Trade Secrets Act.[1]  (Doc. # 22).  The Motion to Dismiss is now fully briefed (Docs. # 29 and 33) and ripe for the Court's review.

III.     Analysis

    A.      Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plausibility standard is met when the facts in the complaint allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The complaint need not contain "detailed factual allegations," but must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.*  Put another way, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

    B.      Applicable Law

Before considering the issues raised in the Motion to Dismiss, the Court must determine which state's law governs.  As a federal court sitting in diversity, this Court must apply "the choice of law rules of the forum state." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 796 (1941)).  Therefore, Kentucky choice-of-law rules govern.

---

[1] All named Defendants joined in the Motion to Dismiss.  After the Motion to Dismiss was filed, the claims against Defendants Charles R. Scheper and the Charles R. Scheper Irrevocable Family Trust were dismissed with prejudice.  (Doc. # 39).

Kentucky's choice-of-law rules are egocentric and there is a strong preference for applying Kentucky law. *See Paine v. La Quinta Motor Inns, Inc.*, 736 S.W.2d 355, 357 (Ky. Ct. App. 1987), *overruled on other grounds by Oliver v. Schultz*, 885 S.W.2d 699 (Ky. 1994). For tort claims, Kentucky law will apply "if there are significant contacts—not necessarily the most significant contacts—with Kentucky." *Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009). Here, there are significant contacts with Kentucky. Therefore, the Court will apply Kentucky law to Charleston's trade-secret and civil-conspiracy claims. Because the Lanham Act is a federal statute, the Court will apply federal law to the false-designation-of-origin claim.

### C. Trade Secret Claim

The Kentucky Uniform Trade Secrets Act ("KUTSA") provides civil remedies for misappropriation of trade secrets if the plaintiff can prove: (1) that the information misappropriated qualifies as a trade secret and (2) that the defendant misappropriated such information. Ky. Rev. Stat. Ann. § 365.892(2)(a)-(b). A failure under either prong will result in dismissal of the claim as a matter of law. *Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 795 (W.D. Ky. 2001).

Information qualifies as a trade secret if it "derives independent economic value," is not "readily ascertainable by proper means," and is the "subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Id.* (citing Ky. Rev. Stat. § 365.880(4)). Without the identification of trade secrets misappropriated, no KUTSA claim is stated. *Amtote Int'l, Inc. v. Ky. Downs, LLC*, No. 1:15-CV-00047-GNS, 2016 WL 1270262 (W.D. Ky. Mar. 31, 2016). However, "so long as [plaintiff] can put forth general

6

categories of its trade secrets and provide the type of factual allegations... that allow for the reasonable inference that [defendants] improperly disclosed some of those trade secrets... [plaintiff] has done all that is required to survive a motion to dismiss." *Luvata Electrofin, Inc. v. Metal Processing Int'l, L.P.*, No. 4:10-CV-203-CWR, 2012 WL 3961226 (W.D. Ky. Sep. 10, 2012). Whether a particular type of information constitutes a trade secret is a question of fact for the jury. *Fastenal Co. v. Crawford*, 609 F. Supp. 2d 650, 671 (E.D. Ky. 2009).

Defendants claim that Charleston's Complaint fails to sufficiently identify a trade secret, and instead merely recites the definition of "trade secret." While it is true that the paragraphs contained within Count 7 (the KUTSA claim) recite only the general definition of "trade secret," other sections of the Complaint identify the trade secret. Specifically, Charleston alleges that Takigiku improperly disclosed proprietary, confidential information, including "information relating to Charleston's product CL-108 and FDA proceedings relating to the product." (Doc. # 1 at ¶ 96). Charleston further alleges that Takigiku obtained such information through his employment with Charleston, and described the efforts taken to maintain the secrecy of such information through the CIIAA agreement. *Id.* Thus, Charleston has "plausibly allege[d] information not generally known and detail[ed] efforts taken to maintain secrecy." *Amtote*, at *21 (citing *Brake Parts, Inc. v. Lewis*, 443 F. App'x 27, 29 (6th Cir. 2011)). Accordingly, Defendants' Motion to Dismiss Charleston's trade-secrets claim will be **denied**.

D.  **Lanham Act Claim**

Charleston brings a claim against Defendants for false designation of origin under the Lanham Act.  "The Lanham Act covers trademark infringement as well as a host of other deceptive practices that might loosely be termed 'unfair competition.'" *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998).  "One such form of unfair competition is the false designation of origin." *Id.*  A person is liable for false designation of origin if they "on or in connection with any goods or services … use[] in commerce … any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which … is likely to cause confusion, or to cause mistake, or to deceive … as to the origin … of his or her goods, services, or commercial activities." *Id.* (quoting 15 U.S.C. § 1125(a)(1)(A)).

Here, Charleston claims that Defendants falsely represented that they were affiliated with Charleston in order to induce investments.  Defendants argue that Charleston is not protected by the Lanham Act, because it has not engaged in commercial activity.  Additionally, Defendants claim that even if Charleston is protected under the Lanham Act, the Complaint fails to state a false-designation-of-origin claim upon which relief can be granted.  The Court will consider each of Defendants' arguments in turn.

1. ***Charleston has engaged in commercial activity.***

The Lanham Act is intended to "protect persons engaged in [commerce within the control of Congress] against unfair competition."  15 U.S.C. § 1127.  Defendants claim that Charleston is not protected under the Lanham Act, because it has not "engaged in commerce," since Charleston does not have a good or service currently being sold to

8

consumers on the market. Charleston asserts that it does have an actual product, and that it has engaged in "years of commercial activity." (Doc. # 29 at 16).

In support of their position, Defendants rely on a case from the Southern District of Texas. In that case, the plaintiff had pitched his idea for a television show called "American Idol" to various producers, and after the defendant produced a show by the same name, plaintiff brought a claim alleging rights in the mark. *Keane v. Fox Television Stations, Inc.*, 297 F. Supp. 2d 921, 926 (S.D. Tex. 2004). The court dismissed plaintiff's claims, finding that the plaintiff had not used the mark in commerce. *Id.* at 937 ("Just as a 'product' is distinct from an 'idea for a product,' an attempt to sell an idea to potential investors is not analogous to the sale of a trademarked good or service to the public at large.").

Defendants contend that, like the plaintiff in *Keane*, Charleston has only an "idea" for a product, rather than having an actual product being sold in commerce. Charleston, however, has more than an idea; it is an established pharmaceutical corporation with a product currently undergoing FDA review. (Doc. # 1 at ¶¶ 18-21). This is commercial activity that Congress regulates. Moreover, the Trademark Manual of Examining Procedure ("TMEP") states that the meaning of "'use in the ordinary course of trade' will vary from one industry to another," and that "a pharmaceutical company['s] … shipment to clinical investigators during the Federal approval process will also be in its ordinary course of trade." TMEP § 901.02 (8th ed. Apr. 2017) (citing H.R. Rep. No. 1028, 100th Cong. 2d Sess. 15 (1988); *Paramount Pictures Corp. v. White*, 31 U.S.P.Q.2d 1768, 1774 n.8 (T.T.A.B. 1994), *aff'd*, 108 F.3d 1392 (Fed. Cir. 1997) (Table)); *see also Kythera*

9

*Biopharmaceuticals, Inc. v. Lithera, Inc.*, 998 F. Supp. 2d 890, 899 (C.D. Cal. 2014). Therefore, by transporting CL-108 for clinical trials, Charleston has engaged in commerce such that its "mark" is protected under the Lanham Act.[2]

### 2. Defendants are not using Charleston's mark in commerce in connection with a good or service.

Although Charleston's commercial interests fall within those protected by the Lanham Act, the Complaint fails to state a viable claim for false designation of origin against Defendants. Charleston's attempt to fit its claim into the parameters of the Lanham Act is akin to fitting a square peg in a round hole. In their attempt to analogize the facts in this case to those in other Lanham Act cases, the parties have demonstrated confusion as to what analysis is applicable. Because Charleston's Lanham Act claim is atypical, none of the cases presented by the parties provide a clear answer. Having reviewed the parties' arguments, the Court finds that Charleston's claim does not fit into the Lanham Act's framework, and thus, Charleston has failed to state a false-designation-of-origin claim upon which relief can be granted.

Section 43(a) of the Lanham Act goes "beyond trademark protection," and "create[s] a federal remedy against a person who use[s] in commerce either a false

---

[2] Defendants make a related argument that Charleston lacks standing to bring a claim under the Lanham Act. (Doc. # 22 at 9). Specifically, they claim that Charleston does not fall within the "zone of interests" covered by the Lanham Act, because they do not have a product on the market. *Id.* The Supreme Court has held that "to come within the zone of interests … a plaintiff must allege an injury to a commercial interest in reputation or sales." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390 (2014). Because Charleston has alleged that it lost investors, and that its reputation has been damaged by Defendants' false representations, its claim falls within the Lanham Act's "zone of interests."

designation of origin, or any false description or representation in connection with any goods or services." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003). However, it does not "have boundless application as a remedy for unfair trade practices." *Id.* (quoting *Alfred Dunhill, Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974)). "Because of its inherently limited wording, § 43(a) can never be a federal codification of the overall law of unfair competition, but can apply only to certain unfair trade practices prohibited by its text." *Id.* (internal citations and quotations omitted). Accordingly, to establish a claim for false designation of origin, a plaintiff must establish each element listed in the statute; that is, the plaintiff must allege that the defendant (1) used in commerce (2) a false designation of origin (3) in connection with any goods or services. 15 U.S.C. § 1125(a).

Here, Charleston presents a claim for unfair trade practices that falls outside of the scope of the Lanham Act. In a typical false-designation claim, the defendant is falsely "passing off" the plaintiff's product or services as its own, or passing off its own product or service as having an affiliation with plaintiff. For example, a claim might allege "the Coca-Cola Company's passing off its product as Pepsi-Cola or reverse passing off Pepsi-Cola as its product." *Dastar*, 539 U.S. at 32. In such cases, the central inquiry—"whether the defendant's actions create a likelihood of confusion as to the origin of the parties' goods or services"—is straightforward. *See Bird*, 289 F.3d 865. In this case, the analysis is anything but straightforward.

Charleston attempts to fit its claim into the mold of the typical case by pursuing both "passing off" and "reverse passing off" theories. Specifically, Charleston alleges (1)

that Defendants falsely represented that Charleston's products or services were its own, and (2) that Defendants falsely represented that their own products or services were affiliated with Charleston. (Doc. # 29 at 14).

Charleston's theories both satisfy one of the requirements for a false-designation-of-origin claim. By alleging that Defendants represented to the public that they "accelerated CL-108 to commercialization," Charleston plausibly alleges that Defendants made the type of false representation actionable under the Lanham Act. However, both the "reverse passing off" and "passing off" claims fail to satisfy the other requirements needed to state a claim upon which relief can be granted. The Court will address each claim in turn.

### a. Charleston's "reverse passing off" claim fails

Charleston claims that Defendants falsely represented that Charleston's product, CL-108, was its own. Specifically, Charleston asserts that Defendants claimed to have "accelerated CL-108 to commercialization." However, Charleston's Complaint fails to allege that Defendants used this false representation "in commerce" as required to state a claim under Section 43(a) of the Lanham Act.

Under the terms of the Lanham Act, "use in commerce" is a term of art defined as follows:

> The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce
>
> (1) on goods when

(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, *and*

(B) the goods are sold or transported in commerce

15 U.S.C. § 1127 (emphasis added).

Critically, Charleston has not alleged that Defendants sold or transported CL-108 in commerce.[3] Nor could they have, since CL-108 is not yet available on the market. Charleston has merely alleged that Defendants' representations were used to lure investors to buy shares in SIDIS and bioLOGIC. But soliciting investments does not fall within the definition of "use in commerce," because it does not involve selling or transporting the goods themselves. Therefore, the Complaint fails to allege that Defendants made a false representation in connection with Charleston's own goods or services.

### b. Charleston's "passing off" claim fails

Next, the Court will consider Charleston's "passing off claim"—that Defendants represented that Charleston was affiliated with or approved of Defendants' own products or services. The Complaint does not identify any specific products or services offered by

---

[3] The parties' arguments focus on whether *Charleston* was engaged in commerce. However, the Lanham Act imposes liability on "[a]ny person who … uses in commerce …." 15 U.S.C. § 1125(a)(1). Thus, the appropriate question is whether *Defendants* made the alleged representations in commerce.

Defendants.[4] Instead, the Complaint alleges that Defendants used Charleston's name in connection with investment-solicitation activities. This allegation fails to save Charleston's Lanham Act claim from dismissal, however, because securities are not "goods" and "investment solicitations are not "services." Therefore, Defendants' representations were not made "in connection with any goods or services."

First, securities are not "goods" sold in commerce. The Lanham Act does not provide a definition for "goods." Thus, courts have looked to other sources for a definition. The Supreme Court defined the term "goods" using its dictionary definition: "[w]ares; merchandise." *Dastar*, 539 U.S. at 31. Other courts have adopted the Uniform Commercial Code's ("UCC") definition of "goods" for the Lanham Act. Under the UCC, "goods" are "all things … which are movable at the time of identification to the contract for sale *other than* the money in which the price is to be paid, investment securities … and things in action." U.C.C § 2-105(1) (emphasis added). Regardless of the definition adopted, courts have uniformly rejected arguments that securities are "goods." *See Groetzinger v. C.I.R.*, 771 F.2d 269, 277 (7th Cir. 1985) ("Securities simply are not 'goods' within the ordinary meaning of the term nor under a legal definition."); *Cottonwood Fin. Ltd. v. Cash Store Fin. Servs., Inc.*, 778 F.Supp.2d 726, 738 (N.D. Tex. 2011) (noting that the UCC's definition of goods expressly excludes 'investment securities'); *Hong Leong Finance Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 74 (S.D.N.Y 2013)

---

[4] In fact, Charleston asserts that SIDIS has "no product or services of its own." (Doc. # 1 at 12). The Complaint does not identify any goods produced or services offered by bioLOGIC or any of the other Defendants.

(listing cases). This Court agrees. Because securities are not a "good" within the meaning of any relevant definition, they do not fall within the meaning of "good" as contemplated by the Lanham Act.

Charleston's Complaint also fails to allege that the representations were made "in connection with a service," because investment solicitations are not "services" under the Lanham Act. While the Lanham Act fails to provide a definition for "services," other courts have found that a trademark user provides a service when it performs the service for the benefit of *others*. *See Morningside Grp. Ltd. v. Morningside Capital Grp., LLC*, 182 F.3d 133, 137-38 (2d Cir. 1999); *In re Canadian Pacific Ltd.*, 754 F.2d 992, 994 (Fed. Cir. 1985). Accordingly, because investment-solicitation activities are performed to raise capital for the corporation, courts have found that those activities do not constitute a "service." *See Cottonwood*, 778 F.Supp.2d at 739 ([L]isting stock on a stock exchange does not constitute a qualifying service under the Lanham Act."); *Leis v. Davidson*, 955 F.Supp.2d 821 (N.D. Ill. 2013) ("Nor does the effort to sell an interest in a corporation constitute a service."). In *Cottonwood*, the court explained its reasoning as follows:

> Public corporations routinely list shares on stock exchanges and conduct promotional investment solicitation[] activities to facilitate the sale and subsequent trading of their stock. Thus, when a member of the public purchases or trades [a corporation's] stock, he does not "expect" to receive investment services from [that corporation]. He may expect (or more accurately, hope) to receive the benefits of ownership in return, but those benefits will flow from the market value of [the corporation's] activities … as reflected in the price of [the] stock. And when a member of the public encounters [a corporation's] investment solicitation activities, he understands that such activities are designed to raise capital for [the corporation's] primary business activity and increase the price of [the] stock.

*Cottonwood*, 778 F.Supp.2d at 740. *Cottonwood*'s reasoning is persuasive. Investment solicitations are not the type of "service" the Lanham Act protects.

Because Defendants' statements made in connection with CL-108 were not "used in commerce," and because investment-solicitation activities do not constitute a "good" or "service," the Lanham Act does not apply. Charleston's claims simply do not fit within the bounds of the Lanham Act's "limited wording." Therefore, Charleston's false-designation-of-origin claim must be dismissed, and Defendants' Motion to Dismiss Count 8 of Charleston's Complaint is **granted**.

### E. Civil Conspiracy Claim

To prevail on a civil-conspiracy claim, a plaintiff must prove "an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act." *James v. Wilson*, 95 S.W.3d 875, 897 (Ky. Ct. App. 2002) (citing *Montgomery v. Milam*, 910 S.W.2d 237, 239 (Ky. 1995)). This requires the plaintiff to show "that the defendants acted tortiously pursuant to a common design, or that they rendered substantial assistance to others to accomplish the tortious act." *Peoples Bank of N. Ky. v. Crowe Chizek & Co., LLC*, 277 S.W.3d 255, 261 (Ky. Ct. App. 2008). A civil conspiracy claim is one "for damages caused by acts committed pursuant to a formed conspiracy." *Id.* Civil conspiracy is not a free-standing claim in Kentucky: "[I]t merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." *Christian Cty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys., Inc.*, 515 F. App'x 451, 458-59 (6th Cir. 2013) (quoting *Stonestreet Farm, LLC v. Buckram Oak*

*Holdings, N.V.*, Nos. 2008-CA-002389-MR, 2009-CA-000026-MR, 2010 WL 2696278, *13 (Ky. Ct. App. July 9, 2010)).

Defendants argue that Charleston's civil-conspiracy claim is barred by the "intracorporate conspiracy doctrine," because the alleged coconspirators are a corporation and its agents. Under the doctrine, a corporation and its employees are one entity, and since two or more actors are required to form a conspiracy, a corporation and its employees cannot form a conspiracy. *See Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. Of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991).

The Kentucky Supreme Court has not yet considered the "intracorporate conspiracy doctrine." However, the Sixth Circuit recently predicted that the Kentucky Supreme Court, if faced with the issue, would apply the doctrine. *Roof v. Bel Brands USA, Inc.*, 641 F. App'x 492, 499 (6th Cir. 2016). Applying Kentucky law, the Sixth Circuit reasoned that "[t]his outcome is a logical extension of Kentucky law and would likely be reached by a Kentucky court considering the issue since 'a corporation can only act through its agents,' *Caretenders, Inc. v. Commonwealth*, 821 S.W.2d 83, 86 (Ky. 1991), and because a conspiracy involves more than one person, *see McDonald v. Goodman*, 239 S.W.2d 97, 100 (Ky. 1951)." *Id.*[5]

---

[5] The Kentucky Court of Appeals recently considered the issue, and found that the intracorporate conspiracy doctrine is a "logical extension of [Kentucky's] rules that 'a corporation can only act through its agents, and that a conspiracy involves two or more persons." *Cowing v. Commare*, 499 S.W.3d 291, 294 (Ky. Ct. App. 2016) (internal citations and quotations omitted). Although Kentucky Court of Appeals decisions are not binding on this Court, the decision is persuasive, and strengthens the Court's reliance on *Roof*. Accordingly, there is no reason to believe that Kentucky law bars application of the intracorporate conspiracy doctrine.

In this case, however, the doctrine is not applicable. Charleston alleges that "[p]ursuant to an agreement by and among the SIDIS-Related Individuals, led by Ferrey, and the SIDIS-Related Entities, led by SIDIS, the Defendants conspired together to commit the torts and statutory violations set forth" in the Complaint. (Doc. # 1 at ¶ 126). Although the Complaint alleges that the named entities and individuals are related, Charleston has not alleged that the Defendants are all employees or agents of each other. Specifically, Charleston contends that "SIDIS and bioLOGIC are separate corporate entities," and that "Takigiku, *while he was an employee of Charleston*, conspired and reported to SIDIS, bioLOGIC, Ferry and LeCroix ...." *Id.* (emphasis added). Thus, while Charleston refers to these entities as "related," Charleston does not allege that they are the same corporation, or agents of the same corporation. While it is possible that Defendants may be able to prove otherwise through discovery, the Court must take Charleston's allegations as true at this stage of the litigation. Therefore, the intracorporate conspiracy doctrine does not apply, and Defendants' Motion to Dismiss the civil conspiracy claim is **denied**.

## IV. Conclusion

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1) Defendants' Motion to Dismiss (Doc. # 22) is **granted in part and denied in part**;

(2) Defendants' Motion to Dismiss Count 7 (Kentucky Trade Secrets Act) and Count 9 (Civil Conspiracy) is **denied**; and

(3) Defendants' Motion to Dismiss Count 8 (Lanham Act - False Designation of Origin) is **granted** and Count 8 is hereby **dismissed**.

This 29th day of August, 2017.



Signed By:
*David L. Bunning*  DB
United States District Judge

k:\data\orders\cov16\16-195 charleston labs moo.docx